Dewey, J.
On the trial before the justice of the peace, it appears that the respondent set up in his defence, that he had been appointed by the commanding officer of the regiment to the office of sergeant-major, and that he was thereby discharged or excused from doing military duty in the volunteer company to which he had before belonged.
On the other side, in support of the complaint, it was contended that the company of light infantry into which the respondent had enlisted did not belong to the sixth regiment, of which he was appointed serjeant-major; and, further, if it did not belong to that regiment, that a private in a light infantry company was not discharged from it, by his being appointed to that office. And these are the two points to be decided in this case.
1. Did the light infantry company belong to the sixth regiment, first brigade, and seventh division, of the militia ?
2. If it did belong to that regiment, was the respondent discharged or excused from doing duty in the company as a private, by his being appointed to the office'of sergeant-major ?
The light infantry company was raised in pursuance of a resolve of the legislature of the 28th of January, 1804, by which the governor and council were authorized to raise, by [ * 389 ] * voluntary enlistment, a company of that description in the first regiment, first brigade, and seventh division, of the militia of this commonwealth, to be attached to the said first regiment, and subject to all the rules and regulations, which are or may be by law provided for the government of the militia of this commonwealth. The men were enlisted from the regiment at large, but mostly from the town of Worcester, and were usually mustered in that town for exercise and reviews ; and no other light infantry company belonged to the regiment.
Afterwards, on the 28th of February, 1812, the first regimen *353 was divided by an order issued by the governor and council, which directed that a new regiment be formed out of the first, to be called the sixth regiment, and to be composed of the several companies of infantry and light infantry in the towns of Worcester, Holden, and West Boylston, and annexed to the first brigade; leaving the first regiment to consist of the companies of infantry and light infantry in the towns of Leicester, Spencer, Paxton, and Ward.
If the volunteer company to which the respondent belonged made a part of the first regiment before the division, and fell within the limits of the sixth, as prescribed by this order, it is very clear that, by virtue of that order, it was transferred from the regiment to which it was originally attached, and made to compose a part of that which was formed by the order.
To avoid this inference, it was said by the counsel, in support of the adjudication of the justice, that the light infantry company made no part of the first regiment at the time when that was divided ; that it was only attached to it, but did not make a component part of it. But we believe, and can have no doubt, that, whenever a company has been raised at large by the order of the governor and council, or a resolve of the legislature, and directed to be attached or annexed to a particular regiment, it has been always well understood that, in all such cases, the volunteer corps made a component part of the regiment to which it was so attached or annexed.
* As this company was raised from the first regiment [ * 390 ] at large, and it does not appear that all the persons who compose it reside within the district of the sixth regiment, it was contended, on this ground also, that it was not transferred by the order of the governor and council to the sixth regiment.
If it was not transferred to that regiment, in what condition is the company placed by virtue of the order ? It must be admitted to belong to one of the two regiments, unless it can be supposed that it is divided between them, or disbanded. It is very clear that the order was not intended to dissolve any regular corps; and. if it has the effect of dividing this light infantry company, it must be owing to circumstances not before us in this case, and which were probably not apprehended by the executive at the time of issuing the order. It is true that it is not expressly stated that all the persons who compose the company reside within the limits of the sixth regiment, as prescribed by the order; and it is equally true that it does not appear, by any thing stated in the evidence, that any of the officers or privates of the company live in either of the towns which compose, the first regimental district. The facts, as stated in relation to this point, are, that the company was raised at *354 large from the first regiment, but mostly from the town of Worcester ; that it was called “ the Worcester Light Infantry,” and usually assembled in that town for military exercise ; and it was admitted, as part of the case, that the respondent is an inhabitant of Worcester.
If any of the persons who originally belonged to the company reside without the limits of the sixth regiment, it is unnecessary to decide what the effect of the order of the governor and council may be as it respects them ; whether they are discharged, or still holden to do duty in the company. It is sufficient, in the present case, to determine that the company, including all those who are inhabitants of Worcester, Holden, and West Boylsion, by virtue of the order, was transferred to the sixth regiment, and made a com panent part of it.
[ * B91 ] * It was further insisted, by the council in support of the proceedings of the justice, that the governor and council had no power to transfer the Worcester Light Infantry company from one regiment to another, because it was raised under a resolve of the legislature, and attached to a certain regiment; and also that the legislature cannot authorize and empower the governor and council to organize and arrange the militia, it being a power delegated to the legislature by a statute of the United States, and therefore to be exercised only by the legislature itself.
But neither of these positions are tenable. The governor and council obviously have the same control over this volunteer corps which they have over all other militia companies. The authority given them for this purpose is in general terms, — “ that the commander-in-chief, with the advice of council, be and hereby is authorized and empowered to organize and arrange the militia of this commonwealth, conformably to the laws of the United States, and to make such alterations therein as from time to time may be deemed necessary.” (1) If there could be any doubt whether power is hereby given to the governor and council to make alterations respecting a company of light infantry, formed by a resolve of the legislature, yet, in this particular case, the resolve itself seems clearly to admit of it. For it subjects the company to all the rules and regulations that are or may be adopted by law for the government and regulation of the militia.
And as to the authority under which the governor and council have acted since the statute of 1793, c. 14, in arranging the militia generally, we see no ground to question its legality. It has been *355 practised upon for more than twenty years, and most of the existing arrangements have been made under it.
The act of the United States of May 8, 1792, does not require the construction which is contended for. The words of the act are, “ that, within one year after the passing of this act, the militia of the several states shall be arranged * in [ * 392 ] divisions, brigades, regiments, battalions, and companies, as the legislature of each state shall direct.” And the legislature of this commonwealth, by the section above referred to, of the act of 1809, c. 108, have directed the manner in which it shall be carried into effect. It was certainly much more fit and proper that this power should be exercised by the commander-in-chief, with the advice of the council, than by the immediate act of the legislature. The law of the United States required the arrangement of the militia to be made within one year after the passing of the act; but it must either be considered as directory after that time, for making such alterations as from time to time might be necessary; or the legislature of the commonwealth is left to provide for them at its own discretion.
As to the second point, it was contended that the appointment of the respondent to the office of sergeant-major could not excuse him from the performance of duty in the volunteer company; because it is provided, by the act of 1809, c. 108, “that every person who shall enlist in any volunteer company shall be holden to do duty therein for the term of seven years, unless sooner discharged by the order of the commanding officer of the brigade.” And a similar provision is contained in the former militia act of 1799, c. 73, which was in force at the time when the respondent enlisted.
This regulation was undoubtedly intended to limit the time generally for which persons enlisting into volunteer companies should be holden to serve, and at the same time to authorize the commanding officer of the brigade to discharge them, in case of misconduct or neglect of duty, as well as for any other reasonable cause. But it cannot be supposed that, under this provision of the law, a private in such company is holden at all events for the term of seven years, unless he obtains the discharge of the brigadier-general. He may become infirm, and unable to do duty, or may remove without the commonwealth, or out of the limits of the division to which the company belongs; and in such cases he would be * discharged, or at least excused [ * 393 ] from the performance of duty while the impediment continued.
*356 There can be no doubt that the promotion of a private of a volunteer company to be a staff officer in the regiment, must operate as a suspension of his duties in the company, provided the commanding officer of the regiment has power to make the appointment from such a company. And we can see no reason why such appointment may not be made as well from that as any other company. All the companies belonging to the regiment are equally under the control of the commanding officer, who is authorized b) law to appoint a sergeant-major; and there is nothing in the laws, or in the reason of things, which restricts him, in making his selection, to any particular companies, in exclusion of others. He may, at his option, make the appointment of a regimental officer from any portion of his regiment. This rule is supported by the most reasonable considerations; and is calculated, in its tendency, to promote and encourage the most useful and meritorious class of the militia, which consists of the various descriptions of the volunteer companies; by placing them, with regard to promotion, on a footing at least as favorable as the non-commissioned officers and privates of other companies.
Considering the appointment of the respondent to the office of a sergeant-major as being legally made, it follows, of consequence, that he is excused from the performance of military duty, as a private in the company of light infantry, during the time he continues to hold that office. Whether he is absolutely discharged, so that, in case of his removal from the office, he would not be again restored to his former standing in the company, it is not necessary now to decide.
Being satisfied that the respondent was not liable to do military duty in said light infantry company at the time of his supposed delinquency, it is the opinion of the Court that the adjudication and order of the justice are erroneous, and that the proceedings must be quashed, (a)

Proceedings quashed.

 Stat. 1809, c. 108, § 2.

 Commonwealth vs. Allen, 16 Mass. Rep. 563.